IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LEISK and ROSE LEISK (h/w), | : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | |
| | : | NO.   14-3639 |
| LESLIE PINCUS ELLIOT, LESTER E. LIPSCHUTZ and MARK S. HALPERN, CO-EXECUTORS OF THE ESTATE OF GERALDINE PINCUS, Deceased, and NATHAN PINCUS, Individually. | : : : : : : | |
| Defendants. | : | |

MEMORANDUM

RONALD L. BUCKWALTER, S.J.                                                                      November 12, 2014

Currently pending before the Court is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) by Defendants Nathan Pincus, Leslie Pincus Elliott, Lester E. Lipschutz, and Mark S. Halpern (collectively "Defendants").  For the following reasons, the Motion is denied.

I.      FACTUAL BACKGROUND

According to the facts set forth in the Complaint, on or about April 23, 2009, Plaintiffs Robert and Rose Leisk leased their home at 232 Atlee Road, Wayne, Pennsylvania to Defendant Nathan Pincus ("Pincus") under a residential lease agreement.  (Compl. ¶ 10.)  Because Pincus's credit history was so poor, it was necessary for his mother, Geraldine Pincus, to co-sign the lease.

(Id. ¶ 11.)  In accordance with the terms of the lease, Pincus entered into possession of the property in June 2009.  (Id. ¶ 12.)  Pincus was aware that the house had ben newly renovated and that "sensitive" materials had been used in construction of the interior.  (Id. ¶ 13.)  Pincus agreed to take care of everything and stressed that, as a designer himself, he knew the sensitivity of all interior fixtures, furniture, and surfaces.  (Id.)

Pincus remained in possession of the leased premises until June 2, 2014, and, at the expiration of the lease, surrendered possession of the premises to Plaintiffs.  (Id. ¶¶ 14–15.)  Upon Plaintiffs' return to the leased premises, however, they discovered a "systematic destruction" of the walls, wood floors, kitchen, bathrooms, carpets, paintwork, and the new furniture and fixtures.  (Id. ¶ 17.)  Soot, dirt, tar from cigarette smoke, blood, liquid stains such as red wine, candle wax, ground-in food, sewage spills, and unrecognizable filth (including garbage) were left on these surfaces, causing irreversible damage.  (Id.)  According to the Complaint, the fair and reasonable cost of repairing and/or replacing the furnishings and fixtures, along with the other consequential costs of receiving uninhabitable premises, exceeds $150,000.  (Id. ¶ 18.)

On June 13, 2014, Plaintiffs initiated the current action for breach of contract.  On August 12, 2014, Defendants brought the current Motion to Dismiss.  Plaintiffs responded on August 29, 2014, making this Motion ripe for judicial consideration.

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case.  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).  When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof

that jurisdiction does in fact exist." Id. at 302 n.3.  There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction.  Id.; Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue thereby causing the case to fall outside the court's jurisdiction.  Mortenson, 549 F.2d at 891.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id.

### III.  DISCUSSION

The jurisdictional basis for the present case rests on 28 U.S.C. § 1332.  Section 1332 states, in relevant part, that "(a) [t]he district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States. . . ."  28 U.S.C. § 1332.  Defendants now contend that Plaintiffs have neither proven that there is complete diversity of citizenship among the parties nor established that the amount in controversy exceeds the sum of $75,000.  The Court considers each argument separately.

### A.  Diversity of Citizenship

"Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010).  Therefore, the key inquiry in establishing diversity is thus the "citizenship" of each party to the action.  Id.  A natural person is deemed to be a

citizen of the state where he is domiciled. Id.; see also Gilbert v. David, 235 U.S. 561, 569 (1915). Domicile, in turn, is established by one's physical presence in a state—e.g., residence—and intent to remain there indefinitely. Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011). "When determining a person's domicile, courts consider declarations; place of employment; exercise of political rights; payment of personal taxes; house of residence; place of business; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; and driver's license and vehicle registration." Freidrich v. Davis, 989 F. Supp. 2d 440, 444 (E.D. Pa. 2013) (citing McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006)), aff'd, 767 F.3d 374 (2014). "More generally, the court must locate the center of one's business, domestic, social and civic life." Washington, 652 F.3d at 344 (citation omitted) (internal quotation omitted).

Defendants contend that Plaintiffs cannot satisfy diversity of citizenship because Plaintiffs are residents of Pennsylvania. Defendants' argument on this point states in its entirety:

> Plaintiffs assert that they are citizens of the Commonwealth of Massachusetts, however, upon information and belief, the Leisks have maintained a home in the Commonwealth of Pennsylvania since at least, if not prior to, 2009 and are currently residing in that same home. While residence alone is not sufficient to establish domicile, and therefore citizenship of a State, the facts of the instant matter indicate a material issue of fact exists as to which State the Leisks are to be considered citizens of for diversity purposes. If the Leisks' appropriate citizenship for diversity purposes is the Commonwealth of Pennsylvania, diversity jurisdiction would be destroyed as at least one of the Defendants, Mr. Pincus, is a citizen of that State, as well. 28 U.S.C. § 1332.

(Defs.' Mem. Supp. Mot. to Dismiss 5.) In support of this contention, Defendants provide no affidavits, documents, testimony, or other evidence to suggest that Plaintiffs are domiciled in Pennsylvania.

Plaintiffs, on the other hand, supply the Court with an abundance of evidence demonstrating that they are, in fact, domiciled in Massachusetts. First, Robert Leisk provides a Declaration averring that he and his wife purchased their house in Wayne, Pennsylvania (the "Wayne Property") in 2004 and lived there until mid-2009, when they moved to California and rented the Wayne home to Defendant Pincus. (Pls.' Resp. Opp'n Mot. to Dismiss, Ex. 1, Declaration of Robert Leisk ("R. Leisk Decl.") ¶¶ 1–3, Aug. 29, 2014.) Since approximately 2007, Plaintiffs have owned a three-bedroom condominium in Nantucket, Massachusetts, and currently do not own any other property besides the Wayne Property and their Nantucket, Massachusetts property. (Id. ¶ 5.) After Pincus vacated the Wayne Property on June 1, 2014, Plaintiff visited it for the first time on June 3, 2014, but stayed at a hotel for two days to assess the damage. Since that time, neither Plaintiff has stayed at the house for even one day due to the condition in which Pincus allegedly left it. (Id. ¶¶ 6–7.) Mr. Leisk remarked that, "[a]s of June 3, 2014 when we re-took possession of Atlee Road [the Wayne Property] and saw its condition we've intended to live in Nantucket, MA indefinitely." (Id. ¶ 8.) He explained further that had the Wayne Property been left in a liveable condition, Plaintiffs would have stayed there for a short period of time to prepare the home for either re-rental or sale, but that became impossible based upon the condition of the home. (Id. ¶ 9.)

In further support of their claim of Massachusetts citizenship, Plaintiffs provide copies of the following: a Massachusetts car-registration dated June 6, 2014; a set of Comcast bills showing full cable and internet connections and usage since June 2014 in Massachusetts; utility bills showing full usage since June 2014 in Massachusetts; Mr. Leisk's business travel records since June 2014 showing a return to Nantucket after weekdays of travel; bank accounts with a

Nantucket, Massachusetts address; documents showing that Mr. Leisk's employer has considered him a Nantucket-based employee for tax purposes since last year; and a document showing Mr. Leisk as a member of the Madaket Residents Association in Nantucket.  (Pls.' Resp. Opp'n Mot. Dismiss, Ex. 2.)  Plaintiffs acknowledge that they still have some personal items and furnishings in storage in Pennsylvania since leaving in 2009, and that their driver's licenses and voter registrations are still issued by the state of California, but they assert that they have been domiciled indefinitely in Nantucket, Massacusetts where they own a home.  (R. Leisk Decl. ¶ 10.)

Given the absence of *any* evidence of Plaintiffs' domicile in Pennsylvania—aside from Plaintiffs' ownership of a home in Pennsylvania in which they have not resided since at least 2009—and given the quantity of evidence showing their residence in Massachusetts where they live on a regular and indefinite basis, the Court finds that Plaintiffs are clearly citizens of the Commonwealth of Massachusetts.  As no Defendant is a citizen of Massachusetts, the diversity of citizenship element of § 1332 has clearly been satisfied.

**B.      Amount in Controversy**

Federal courts may exercise diversity jurisdiction only if the parties are of completely diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Once a defendant has challenged the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to justify its claims.  Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995).  The party asserting jurisdiction bears the burden of demonstrating that the district court has the power to hear the case.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).  "'Unless

the law gives a different rule, the sum claimed by the plaintiff controls. . . . It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" Capital Mfg., Inc. v. Rayco Indus., Inc., No. Civ.A.05-979, 2005 WL 1084649, at *1 (E.D. Pa. May 6, 2005) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)). "[L]egal certainty," however, does not require absolute certainty. Nelson v. Keefer, 451 F.2d 289, 293 n.6 (3d Cir. 1971).

Again, Defendants present the most cursory of arguments in support of their contention that the amount in controversy does not exceed $75,000, as follows:

> [T]he Leisks allege that Mr. Pincus "breached the lease by failing to surrender the [Premises] in substantially the same condition in which they were leased to Mr. Pincus, reasonable wear and tear excepted." Specifically, Plaintiffs claim that Mr. Pincus causes [sic] damage to the walls, floors, kitchen, bathrooms, carpets, paintwork, furniture and fixtures in the nature of stains to surfaces and "filth". Plaintiffs attach as Exhibit 2 to their Complaint photographs reflecting the alleged damages, and seek $2,800 in unpaid rent and late fees and $200,000 for "fair and reasonable cost of repairing and/or replacing the furnishing and fixtures, along with the other consequential costs of receiving uninhabitable premises."
>
> No evidentiary support other than the photographs, which portray garbage and dirt/stains to the surface of some items inside the Premises, is offered in support of their claimed damages in excess of $200,000. Instead, the photographs and acts alleged in the Complaint reflect ordinary wear and tear to be expected after a five-year lease term, as well as stains that would require cleaning services in order to repair. While it may be ultimately proven in a court of competent jurisdiction that the Leisks may be entitled to some amount of damages for such services, it simply cannot be said that Plaintiffs have asserted even a good faith basis for damages in excess of $75,000. As it appears to a legal certainty that Plaintiffs' claim is really for less than the jurisdictional amount, diversity jurisdiction is further lacking.

(Defs.' Mem. Supp. Mot. to Dismiss 5–6.)

In response, however, Plaintiffs again provide a plethora of evidence detailing a total amount in controversy of approximately $239,000, which includes approximately $50,000 in

7

unpaid rent, late fees, unpaid landscaping bills, and lost rent. Plaintiffs supply a seven-page spreadsheet, authenticated by Mr. Leisk's Declaration, itemizing the precise damages to the home, specifying the cost of repair of each item, and attaching to the spreadsheet an invoice or other documentary evidence supporting each item. The evidence ranges from contractor estimates to web pages showing the cost for various pieces of furniture that were allegedly destroyed by Pincus. As such, in stark contrast to Defendants' bald allegations that the amount in controversy could not possibly exceed the jurisdictional threshold, Plaintiffs provide ample evidence that their damages not only meet the $75,000 statutory threshold, but far exceed it. Therefore, the Court finds that Plaintiffs have established the appropriate amount in controversy to a legal certainty.

    **C.**    **Request for Additional Discovery**

In an alternative to their request for dismissal, Defendants seek a period of forty-five days in which to conduct jurisdictional discovery. The Court declines this request for several reasons. First and foremost, Defendants have provided nothing more than speculative arguments, all of which were responded to by Plaintiffs via detailed evidentiary submissions. Absent some showing of what Defendants hope to obtain in jurisdictional discovery, the Court is not inclined to delay the litigation in order to permit Defendants to engage in a fishing expedition for potentially helpful evidence.

Second, Defendants will suffer no prejudice by the Court's refusal of their request. Typically, jurisdictional discovery is permitted where a defendant challenges the federal court's jurisdiction and the plaintiff faces dismissal of his or her case. In this matter, however, it is Defendants seeking the jurisdictional discovery in the face of a finding that diversity jurisdiction

has been adequately established by Plaintiffs.  Defendants will have the opportunity, during the normal course of discovery, to inquire into some of the factual allegations supporting Plaintiffs' claims to diversity jurisdiction.  "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." Kontrick v. Ryan, 540 U.S. 443, 455 (2004); see also Brown v. Phila. Hous. Auth., 350 F.3d 338, 347 (3d Cir. 2003) ("Defenses relating to subject matter jurisdiction can be raised at any time.").  Thus, should such discovery reveal that either diversity of citizenship is lacking or that the amount in controversy does not meet the $75,000 threshold, Defendants may immediately present that issue to the Court.

## IV.     CONCLUSION

For the reasons set forth above, the Court declines to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.  Further, the Court will not allow any special period of jurisdictional discovery.  Accordingly, Defendants' Motion to Dismiss is denied in its entirety.

An appropriate Order follows.